# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

Tanveer S. Majid,   *
18903 Abbey Manor Drive
Brookeville, MD 20833-3247

    Plaintiff,   *

    v.

Central Intelligence Agency (CIA),   *
1000 Colonial Farm Road
McLean, Virginia, 22101

    Defendant

Civil Action No. **TDC 20 CV 2886**

FILED ___ ENTERED
LOGGED ___ RECEIVED

OCT 0 6 2020

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

\*\*\*\*\*\*\*\*

## COMPLAINT FOR INJUNCTIVE AND MONENTARY RELIEF

### (TO BE REVIEWED AND RULED ON BY A JUDGE OTHER THAN DEBORAH K. CHASANOW)

Now Comes Tanveer S. Majid (Plaintiff) for his complaint against the Central Intelligence Agency (Defendants), brings forth the following cause of actions and claims:

### INTRODUCTION

1.    This is a civil action for injunctive and monetary relief for the substantial emotional distress inflicted upon the Plaintiff by the Central Intelligence Agency in violation of United States Constitution and Federal Laws. This action is brought to enforce significant and ongoing

violations of the United States Constitution and Federal Laws, that is placing the Plaintiff at significant and immediate risk of harm, and continuous emotional distress.

## JURISDICTION

2. This Court has jurisdiction over the claims set forth in this complaint pursuant to 28 U.S.C. § 1331.

## VENUE

3. Venue is properly vested in this Court under Section 28 U.S.C. § 1391(e).

## PLAINTIFF

4. Plaintiff is a thirty-six (36) year old resident of the State of Maryland domiciled in the county of Montgomery at 18903 Abbey Manor Drive, Brookeville, Maryland 20833-3247. The Plaintiff is a graduate of the University of Maryland – College Park with a Bachelor of Science in Geography – Geographic Information Sciences and Computer Cartography.

## DEFENDANT

5. Central Intelligence Agency - 50 U.S. Code § 3035, is a Federal Agency located at 1000 Colonial Farm Road, McLean, Virginia, 22101 The African American woman (name unknown) described in line eight (8) of this complaint is an employee of the Central Intelligence Agency and the Plaintiff reasonably believes this woman is coordinating this harassment with other Central Intelligence Agency employees as this is occurring twenty-four (24) hours a day and seven (7) days a week.

## FACTS

6. The Defendants, orchestrate and implement a campaign of ongoing twenty-four (24) hours a day, seven (7) days a week of harassment, stalking and surveillance, collectively known as "gang stalking" that are violating Federal Laws and the Constitution of the United States.

7. Gang Stalking involves groups of individuals (gang stalking groups) operating territorially and nationwide, and, in communication and collusion with each other, to violate the civil rights of, and disrupt, destabilize and finally destroy individuals who are put on a Stalking List for various reasons. The gang stalking groups use both intensive physical and electronic surveillance means to do this... including], but not limited to: street theatre, in which targets of gang stalking are subjected in public to rudeness, loud speaking and personal references to themselves and their private activities by persons within the gang stalking conspiracy; [and] related flash mobbing, or the coming together of an often large group of individuals in the gang stalking conspiracy to disrupt, intimidate, harass and otherwise confuse a gang stalking victim...." **(See Attachment A)**. The Department of Justice defines the term "stalking" means engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for his or her safety or the safety of others or suffer substantial emotional distress. **(See Attachment B)**.

8. The Plaintiff's targeting of covert/overt harassment began at the University of Maryland - College Park's Spring Career Fair in 2013 when Plaintiff submitted to employment to various organizations including the Central Intelligence Agency (CIA). For unknown reasons an employee of the Central Intelligence Agency began to follow Plaintiff closely behind his back and humming in a loud manner. This Central Intelligence Agency employee is identified as an African American woman who is approximately 5'9 in height. These actions by this employee was a demonstration of the Plaintiff's future ongoing relentless harassments, threats, stalking and

surveillance that was to occur. These actions that the Central Intelligence Agency's employee demonstrated upon the Plaintiff was repeated in an exact manner by dozens of other individuals at various other locations including but not limited to Plaintiff's place of grocery shopping, dining, and places of errands.

9. Subsequent to the aforementioned demonstration of Plaintiff's initial targeting by the Central Intelligence Agency, the Plaintiff has been subjected to coordinated harassment and threats by random enlisted individuals as this occurs at Plaintiff's neighborhood in Brookeville, Maryland and outside of his neighborhood. The Plaintiff's place of residence is under surveillance by unknown surveillance technology(s), as the Plaintiff is being made aware of his covert surveillance through his electronic harassment being implemented by very low frequencies. The electronic harassment by very low frequencies are "pulsing" noises that are being directed at Plaintiff though the electromagnetic spectrum at the range of 5 kHz which are imperceptible to others.

10. The Plaintiff has been gang stalked across the state lines of Maryland as this has occurred in Delaware, Pennsylvania, New Jersey, New York, Washington D.C., Ohio, Indiana, and Illinois. The Plaintiff in an attempt to elude these harassments, threats and surveillance moved from his residence in Brookeville, Maryland to Chicago, Illinois. These harassments, threats and stalking occurred in Chicago, Illinois.

11. Frequency Harassment can scientifically be described as the Microwave Auditory Effect. This was initially discovered by Dr. Allan Frey in 1962. **(See Attachment C).** *The microwave pulse, upon absorption by soft tissues in the head, launches a thermoelastic wave of acoustic pressure that travels by bone conduction to the inner ear. There, it activates the cochlear receptors via the same process involved for normal hearing.* **(See Attachment D).**

*Effective radiofrequencies range from 2.4 to 10000 MHz, but an individual's ability to hear RF induced sounds is dependent upon high frequency acoustic hearing in the kHz range above about 5 kHz.* **(See Attachment E).** Plaintiff has received a voicemail of Dr. Allan Frey who confirmed the existence of Microwave Auditory Effect **(See Attachment - Dr. Allan Frey VoiceMail).** Plaintiff has also compiled a list of the technologies used to remotely track an individual and to harass and torture an individual via the Microwave Auditory Effect **(See Attachment E-1).** Plaintiff has also acquired documentation from the U.S. Army that explains the Microwave Auditory Effect as it is directed towards an individual through the electromagnetic spectrum. This is from year 2006, as it was capable then and now technology is far more advanced: *Microwave hearing is a phenomenon, described by human observers, as, the sensations of buzzing, ticking, hissing, or knocking sounds that originate within or immediately behind the head. There is no sound propagating through the air like normal sound. This technology in its crudest form could be used to distract individuals; if refined, it could also be used to communicate with hostages or hostage takers directly by Morse code or other message systems, possibly even by voice communication.* Pg. 6.  **(See Attachment E-2).**

12.     There are numerous other individuals residing within the United States that are experiencing some form of gang stalking and frequency harassment **(See Attachment F).** A notable individual that was being targeted for frequency harassment and gang stalking was Washington Navy Yard Shooter Aaron Alexis. In 2013 Aaron Alexis killed twelve (12) people at Washington Navy Yard and prior to the shooting he was complaining of frequency harassment and gang stalking. On his shotgun Aaron Alexis etched "ELF" an abbreviation for Extremely Low Frequencies in which he was implying his frequency harassment. The Federal Bureau of Investigations wrote him off as being "delusional" and did not investigate further into this. **(See**

**Attachment G)**. This is concerning to the Plaintiff as these rogue individuals within the Central Intelligence Agency who are orchestrating these gang stalking's and frequency harassment have continued their illegal activities after the Aaron Alexis incident for no clear reason (despite any reasoning this is illegal) other than for their own enjoyment. They have continued to conduct this on numerous other individuals including myself with the due disregard for human life, U.S. laws and the U.S. Constitution. These rogue Central Intelligence Agency employees pose a threat to the United States National Security. The Plaintiff is concerned that a repeat of the Aaron Alexis incident could occur again if no action is taken to bring these perpetrators to justice as this is continuing to occur with numerous other individuals. The Plaintiff - Tanveer S. Majid does not now and never will in the future be a threat to anyone or anything in any way shape or form.

13. A detailed affidavit by Ted L. Gunderson a retired Federal Bureau of Investigations - Bureau Chief, Senior Special Agent in Charge, Head of the Los Angeles FBI Field Office explains the aforementioned illegal activities. (**See Attachment H**).

14. The Plaintiff has consulted with Private Investigator John B. Lopes of The Agency, Inc. Private Investigators in Maryland and Virginia (Maryland State License # 106-2340, Virginia State License # 11-4330, District of Columbia License # 0813). John B. Lopes confirmed that these events are occurring towards Plaintiff. John B. Lopes has written a detailed article explaining the aforementioned illegal activities. (**See Attachment I**).

15. Plaintiff in Summer of 2017 contacted the Office of Inspector General for the Central Intelligence Agency and spoke to an individual named "Will." Will stated to Plaintiff that necessary actions would be undertaken to halt Plaintiff's targeting and gang stalking, Plaintiff's targeting / gang stalking never ceased. Plaintiff again contacted the Office of Inspector General for the Central Intelligence Agency in Summer of 2019 and spoke to an individual named,

"Nick." Nick acknowledged that Central Intelligence Agency does target individuals but referred Plaintiff to law enforcement for further action.

16. Plaintiff's computer is remotely being monitored. On November 13 – 15 2018, Plaintiff created an account with U.S. Office of Special Counsel and attempted to file a complaint against the Central Intelligence Agency. Plaintiff account was hacked into in an attempt to deter Plaintiff from filing a complaint. **(See Attachment J).**

17. On November 18, 2018, Plaintiff filed a complaint with the United States Department of Justice. On February 1, 2019, the Department of Justice replied that Plaintiff does not have evidence to warrant action by their office and stated that Plaintiff has already contacted the proper authorities implying the Central Intelligence Agency's Office of Inspector General. The Plaintiff as prior stated contacted the Central Intelligence Agency's Office of Inspector General (Nick) who referred Plaintiff to law enforcement. As Department of Justice mentioned that Plaintiff does not have evidence, Plaintiff provided proper documentation proving that the illegal activities are occurring. It is extremely difficult to provide physical evidence against the gang stalking / targeting being orchestrated against Plaintiff by rogue employees of the Central Intelligence Agency because of their expertise in leaving no tangible evidence. During this time Plaintiff was extraordinarily harassed and threatened to dissuade Plaintiff from filing a complaint. **(See Attachment K).**

18. On December 5, 2018 Plaintiff felt a burning sensation on his back. Plaintiff immediately realized that he was being assaulted by radio frequency as this has occurred to Plaintiff 2-3 times before and Plaintiff had difficulty figuring out what it was. Plaintiff immediately grabbed his radio frequency detector and Plaintiff's radio frequency detector registered a full alert to the exact site of Plaintiff's assault. **(See Attachment K-1).** Plaintiff has

acquired documentation describing this assault when directed towards an individual from the U.S. Army. This is from year 2006 as it was capable then, and now the technology is far more advanced: *A variety of factors contribute to the attractiveness of this nonlethal technology. First, it is based on a well-known effect, heating. Every human is subject to the effects of heating; therefore, it would have a predictability rating of 100%. The time to onset can probably be engineered to between 15 and 30 minutes; however, timing is the subject of additional research to maximize heating while minimizing adverse effects of localized heating. The onset can be slow enough and/or of such frequency to be unrecognized by the person(s) being irradiated. Safety to innocents could be enhanced by the application and additional development of advanced sensor technologies. Incapacitation time could be extended to almost any desired period consistent with safety. (Given suitable R&D, temperature or other vital signs could be monitored remotely, and temperature could be maintained at a minimum effective point).* Pg. 4. *Equipment needed to explore this concept in the laboratory is available today.* Pg. 5. **(See Attachment E-2).**

19. On October 11, 2019 Plaintiff contacted United States Senator for Maryland the Honorable Ben Cardin. Plaintiff submitted the same information as mentioned in line 17. On January 24, 2020, Plaintiff received a response from the Honorable Ben Cardin's office a letter from the Federal Bureau of Investigations stating that Plaintiff's complaint is not within the Federal Bureau of Investigation's jurisdiction. This is on the contrary as the Plaintiff's complain does fall within the Federal Bureau of Investigation jurisdiction and the Plaintiff has clearly demonstrated in his complaint of Federal Law violations and the FBI's reply falls under the Willful Blindness Doctrine. The Plaintiff is concerned as with the Aaron Alexis incident of

the refusal of the Federal Bureau of Investigation to investigate these complaints and to halt these illegal activities. **(See Attachment L)**.

20. During the time Plaintiff contacted United States Senator Honorable Ben Cardin, the Plaintiff was once again extraordinarily harassed and threatened to dissuade Plaintiff from filing a complaint, including staged vehicular collisions threats against Plaintiff. The Plaintiff this time has managed to capture some of these incidents on video. **(See Attachment M)**.

21. Plaintiff's targeting / gang stalking is a variation of the Central Intelligence Agency's previous MKULTRA program in which the agency was supposed to have halted in 1973. **(See Attachment N)**.

22. The Plaintiff is currently enduring death threats to dissuade Plaintiff from filing this lawsuit.

23. Plaintiff on June 3, 2020 had encountered the Montgomery County Police Department who came to Plaintiff's house to harass and intimidate him about his pending case against the Central Intelligence Agency (U.S. Court of Appeals #: 20-1276) which implicated Montgomery County Police Officers. Plaintiff was posting videos of gang stalking on his YouTube site – Targeted Individual / Gangstalking in Maryland – URL: https://www.youtube.com/c/TargetedIndividualGangStalkinginMaryland/videos
The lead police officer was Michael Chindblom who attempted with "therapist" Beth Tabachnick, Police Officer Fernando Carvajal, Police Officer Marlo Reese (Officer #: 2177), and Police Officer Hengxin Chen (Officer #: 2965) to commit Plaintiff to the Mental Health Hospital to discredit, Plaintiff about his pending case. This was an attempt to injure and kill Plaintiff through the coronavirus as the highest concentration of individuals infected with the coronavirus are within the hospitals. This is a classic tactic used towards individuals who are

targeted / gang stalked to silence them and discredit them as Private Detective John Lopes states in his article "It is a psychological reign of terror intended to make victims look crazy." Attachment I – Pg. 43. **(See attached video of Montgomery County Police at Plaintiff's House).**

24. These Police Officers who came to Plaintiff's house with the intent to commit Plaintiff to the Mental Health Hospital to discredit Plaintiff, and to injure and kill Plaintiff through the Coronavirus deactivated and/or destroyed their bodycams in an effort to conceal their criminal intent towards Plaintiff in violation of Montgomery County Police Policy. **(See Attachment O).**

25. Plaintiff has filed a lawsuit against these individuals in this Court and the Honorable Judge Theodore D. Chuang has issued a Case Management Order in this case - Case #: 8:20-cv-01517-TDC. This case explains the entirety of the Plaintiff's encounter with the Montgomery County Police at his home.

26. Plaintiff was being threatened not to file any further pleadings against the Central Intelligence Agency or against the Montgomery County Police Department through the attack and killing of Federal Judge Esther Salas's son and husband. Honorable Judge Esther Salas is with the U.S. District Court of Newark, New Jersey. In the first part of this video, hazard lights indicates a police presence and this is again repeated in the second part of the video at an individual's house at 3:04 a.m. followed by the Police turning on their spotlight towards Plaintiff at 3:08 a.m. The Medstar Montgomery Medical Center security vehicle at 3:07 a.m. indicates that somebody is going to be in the hospital. The second part of the video occurred on July 18 while Plaintiff was mailing court paperwork. This was again repeated the following day on July 19 where Federal Judge Esther Salas (Plaintiff mailing Court Paperwork) was

attacked as her son was killed and her husband was shot and there was a police presence (hazards lights) at her home, her son and husband went to the hospital (Medstar Montgomery Medical Center Security vehicle). This is not a random occurrence but rather cryptic messages sent towards Plaintiff as Private Detective John Lopes writes in his article, "Lawson writes that the victim is intentionally "sensitized" to the presence of the stalkers, so that he or she will know that the occurrences are orchestrated – Attachment I – Page 43. Plaintiff has been targeted / gang stalked in New Jersey. **(See video of Judge Esther Salas Impending Attack).**

27. On 9/15/2020 two U.S. Marshalls came to Plaintiff's house to investigate Judge Esther Salas attack as after the attack on Judge Esther Salas Plaintiff informed the Federal Court of New Jersey **(See video of U.S. Marshalls at Plaintiff's house and Judge Esther Salas E-Mails).**

28. Gangstalking has also been on the news as Lt. Larry Richard of the Santa Cruz Police Department explains this **(See Video – Gang Stalking on Fox News).**

29. Plaintiff has fully exhausted his legal remedies to resolve this issue.

## VIOLATIONS OF THE LAW

1. The Central Intelligence Agency has violated 18 U.S. Code § 2261A. Stalking.

2. The Central Intelligence Agency has violated 18 U.S. Code § 2511. The Wiretap Act.

3. The Central Intelligence Agency has violated Executive Order 13470.

4. The Central Intelligence Agency has violated 18 U.S. Code § 113. Assaults within maritime and territorial jurisdiction.

## RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

1. Order the Central Intelligence Agency to cease and desist all surveillance, harassment, threats to Plaintiff as no government body is currently taking a holistic or proactive view of Plaintiff's targeting / gang stalking.

2. Order an award for Plaintiff's damages of substantial emotional distress, continuously fearing for his safety, unanswered crimes being committed against him and disruption of his life for the past seven (7) years due to the aforementioned facts/violations of the laws in the amount of ten million dollars ($10,000,000).

3. Grant any further relief as this Court may deem just and proper.

**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE – RULE 38 THE PLAINTIFF DEMANDS A JURY TRIAL.**

***ALL ATTACHMENTS WERE SUBMITTED WITH THIS COMPLAINT ON A CD***

RESPECTFULLY SUBMITTED this 6th day of October, 2020.

*Tanveer Majid*
Tanveer S. Majid
18903 Abbey Manor Drive
Brookeville, MD 20833-3247
Tel: (240) 753-2960
Email: Planters00000@gmail.com